Still good morning, and may it please the Court, I'm Katie Kovacs. How are you? Good. May it please the Court, Katie Kovacs on behalf of the United States. I'd like to reserve five minutes of my time for rebuttal, if I may. Buono. Buono. The district court in this case held that a cross that was erected as a war memorial in 1934 by the VFW violates the Establishment Clause and enjoined its display. That judgment should be overturned because the plaintiffs in this case lacked standing and because the ruling was incorrect on the merits. First, the plaintiffs in this case lacked standing because the harm that they allege is not within the zone of interests of the Establishment Clause. What the plaintiffs here allege is that they are offended because the cross is on Federal land that's not open to other displays. In other words, they're offended because this isn't an open forum. The plaintiffs here do not allege any sort of religious harm. So they don't allege, for example, Oh, I thought Buono said, I don't even go by there because it offends me. There's a cross there. It offends me. I take security's roots because I didn't even want to look at the darn thing. He does allege that he avoids the cross and he does allege that it offends him. He suffers anguish. He gets sick, lame and sore. And I am willing to take that as a given that he is certainly offended by the cross and avoids it. But the reason he said he avoids it, and what makes this case very unusual, is that the plaintiffs in this case affirmatively asserted a nonreligious injury. What they're saying is other people should be allowed to put up displays, too. They say they're offended because it's not an open forum, because other ---- I'm sorry. You know, the problem is if you make it that restrictive, no Christian can ever object to a cross being set up. Isn't that what you've just done? You just said only people who can object now to a cross are non-Christians. You have to be the outsider. So isn't that what you've done? And is that the right rule? I've tried to think of a case in which a Catholic could be ---- could bring an establishment clause, claim challenging a cross, and I have not been able to think of a case. I wouldn't want to say across the board that a Christian can never challenge a cross. But in this case, Mr. Buono is Catholic. He affirmatively said in his declaration and in his deposition that he isn't offended by the cross, and he's not offended because the cross is not Federal land. He's offended because other people can't put up their own displays. And so he's ---- Isn't it enough that his view of the proper way to practice religion in this country is for everybody to get to practice their religion? I don't believe so, Your Honor. And I point the Court to the Catholic Conference case in the Second Circuit, where the Court held that the plaintiffs there had nothing more than a generalized grievance, that they weren't the subject of any governmental action, just like here, where Mr. Buono and Schwartz didn't have any government ---- they don't have no personal injury, unlike Mr. Hoops, a.k.a. Sherpa, Harold Hoople. Well, maybe the Ninth Circuit's different. The Ellis case seems to take a different view of standing. Three points about Ellis, Your Honor. But it's not ---- and before you just, like, say all they did was decide standing for the California Constitution challenge, that's not what they did. Didn't they make a standing finding generally because there was a Federal claim, which is why they had the case and would have jurisdiction, and then they decided the supplemental claim? Well, I think there's two other ---- Tell me that's not the rule. Three issues with Ellis. First of all, the Court didn't discuss. There was one Catholic plaintiff in that case, and the Court didn't really discuss his standing. The Court didn't discuss whether a Catholic plaintiff has standing to challenge a cross. The issue wasn't raised. Second of all, there were other plaintiffs in that case who were not Christian who did have standing. And third of all, yes, that case was decided under the California Constitution. Of course, the Court addressed standing first, but it's not entirely clear to me that I don't think that the case is binding in this case at all because it was decided under the California Constitution. Mr. Bourne was Catholic. He said so. It's at page 59 of the excerpts. It's in his ---- Yeah, and he says it in his declaration and in the deposition. He says affirmatively that he is not offended by the cross per se. In his first declaration, page 27 of the excerpts, I am Roman Catholic, attend Mass, and obviously have no objection to Christian symbols on private property. However, I do strongly object to the government allowing the symbol of one religion on government property that is not open to others to place freestanding signs or symbols that express their views or beliefs. He's not saying I'm offended. Well, what about the Eugene case on this, the SC times 2? Right. Understanding what they said was as a threshold matter, we note that separation is composed of local citizens who have standing to bring this challenge because they alleged that the cross prevented them from freely using the area on and around Skinner's Butte. Right. And that's in a footnote court just says, no kidding, they've got standing. It doesn't say whether they're Christian, atheist, Jewish. They're saying it maybe doesn't matter. It cites to Ellis, which we've discussed, which in turn cites to Hewitt, which is where all this starts in the Ninth Circuit, which simply cites to a Seventh Circuit, Eleventh Circuit case, but again doesn't have any discussion of what religion the plaintiffs are. I was unable to find any cases. It doesn't say whether. Isn't it possible, do you have to be intrafaith offended? In other words, if somebody, this group in Eugene was named separation of church and state committee. That could be composed of anybody who felt that the state ought to stay out of the church business. And so it really didn't matter what church they went to as long as they believed that. It is entirely possible that that's what the court was thinking. Of course, the court didn't discuss it. So we don't know. All the court did was stick in a footnote saying, yes, they have standing, cite to Ellis, which cites to Hewitt, which cites to other courts. You're questioning the new rule that limits people's rights to bring First Amendment establishment, establishment cases based on their religion, basically. It's not a new rule, Your Honor, with all due respect. In Valley Forge, the court held that, and in Bennett v. Speer and in any number of other Supreme Court cases, the Supreme Court has held that to have standing, you need to have harm that falls within the zone of interest of the provision that gives you the claim. And here, the harm that the establishment clause is aimed at is making people feel like outsiders, making them feel like they're not full members of the political community. In this case, and again, what makes this case unusual. I thought the harm was being, having your government be establishing a religion. Okay. I thought that's what the harm is. The way the Supreme Court. Why does it have to be what you say? Well, the Supreme Court hasn't stated it that way, Your Honor. The Supreme Court has stated that the establishment clause protects against making people feel like they're not part of the political community. Again and again, it's making you feel like you're an outsider, giving a message that you're not. It's not the feeling outside the political community clause. It is the establishment clause. The Supreme Court may have explained some of the outer parameters of it by saying, well, you know, but this seems to be quite core. I mean, the guy says, I object to having my government having a clause on land, and moreover, a clause where they don't allow other people to have their own religious symbols, you know, so that. And. Which sounds like my government is establishing one religion over others. And as the second. Why isn't that? It's called establishment clause, right? Well, and again, I'd point the Court to this Catholic Conference case from the Second Circuit, sort of an analogous case in this sense, that the Court there held that the plaintiffs weren't injured in a particularized way. Their injury wasn't distinguishable from the generally aggrieved public, because there was no. But Mr. Bono is distinguishable. He goes there. He was there. He has to see it. He wants to use this land. So he's distinguishable from the mass of taxpayers or whoever. But the reason. He needs that part, and then he gets there. He says, oh, my God, my government is engaging an establishment. And our problem with his assertion is that the reason he avoids the cross isn't because of his religion. It's because of an ideology. And I think a hypothetical might flesh out what I'm trying to say. It doesn't have to be because of his religion. Where do you get that? The establishment clause protects against the establishment. That itself is a political concept. It doesn't mean that you have to be heard in your religion, because if that were the case, it would mean that, well, whatever. I mean, let's say the State of California decided to adopt the Roman Catholic Church as its state religion, the Roman Catholics, none of them could object, because it's their religion. And yet they might feel, well, wait a minute. What we object to is not the Roman Catholic religion, which we love dearly, but its establishment as a state religion. That's what we object to. And isn't that exactly what Mr. Bonner is saying? I don't believe so, Your Honor. And I think my hypothetical may pinpoint where the government's objection is here. There might be somebody who objects to the cross because he doesn't think that there should be man-made objects in parks. And he might avoid the cross, and he might be offended by the cross because he thinks it's a blight on the natural landscape. That person's aesthetic injury certainly does not give rise to an establishment clause claim. The same thing. It certainly not, although he would have a particularized injury. Exactly. It may not be one that's condemnable under the establishment clause, but it would be certainly particularized. Exactly. Our position is that Mr. Buono and Schwartz are no different from that person. They have a – allegedly have an injury. Allegedly, Mr. Buono avoids this area of the cross, but – although I would point out that we did try to raise a question of fact on that. The difference is he avoids it because he sees his government doing the thing that he believes establishment clause prohibits, and that is to establish a religion. It happens to be his religion, but that doesn't make it any better for him because he sees an establishment going on. And then next week, somebody else's religion, which isn't his religion, might be established. You know, his problem is establishment clause. His problem is that other people can't put up displays in this area, too. That's right. That's what he said affirmatively, is that other people can't put up the – not I can't, but other people can't. And that's our problem. That's one way in which government can establish religion. It's perhaps the most pernicious form of establishment, and that is to establish one religion to the exclusion of others. So the state religion concept, although we know that they can establish it in more ways than one. I think maybe you better move on to the next. Thank you, Justice. Could I ask, could I possibly, this thing be mooted? I thought there was some plan to transfer this piece of land to the VFW. Yeah, there's actually – I'm glad you asked, Your Honor. There's actually two bills, two appropriations bills that have passed the House that contain provisions that would require this land to be transferred to private parties. The Senate versions of the bills do not have this provision included, so it will be decided in the conference committee. And I will, of course, inform the Court as soon as, as soon as anything further happens. I should point out, though, federal land transfers can take an inordinate amount of time to accomplish. I'll hold my breath. So, yeah. But I think certainly once the government doesn't own the property, the case would be moot. Moving to the merits, if I might. I don't know. I'm sorry? The title on Monsolidad, that didn't tell us where. How much of the land are they selling here? It stakes out about an acre around. And this case would be entirely distinguishable from the land transfer in Monsolidad for any number of reasons. But the most basic reason that case wouldn't apply here is it was under the California Constitution. But, of course, that's not up for grabs at this point in the litigation. I understand. But the claims in that case were based on both state and federal laws. Of course. But the Court only decided that the transfer violated the state constitution. Right. All I'm saying is if you're talking just about a single acre in the middle of a huge federal enclave, I would not count on seeing this case go away. I think that Mr. Eisberg will, it's a very good chance we'll see him back here again. Well, and I would love to speak to you all about the case again. At the moment, I'd love to speak to you all. I'm not telling him what to do, of course. I have a feeling. You don't have much time left. Let me give you a one minute. I have a one minute.     Mr. Eisenberg, I would like to ask you, if you'll allow me. I'm going to give you 150 well-chosen words, how you distinguish this case from the Eugene case, other than the size of the cross. Right. Well, first of all, I think the size of the cross is relevant. I point the Court to Allegheny County, 617-18, and to Ellis at 1526. You focus on the history of the cross and the context of the cross under Lemon Prong II. The history of this cross is truly unique. It was erected 70 years ago by private parties. It was originally intended as a war memorial. It sounds like Mount Soledad. No, the difference in Mount Soledad. Everything you said was. . . No, it's not. Wait a minute, didn't it start as a wooden cross? No, this started as a wooden cross. But Mount Soledad, if you look in the Ellis decision, the Mount Soledad cross was dedicated in a religious ceremony on Easter Sunday. And the district court in that case found that the war memorial designation of that cross was a pretext. That's the Mount Soledad cross. The Mount Helix cross in Ellis was a memorial to an individual, and it also was required when it was given to the county. It was required that the county hold Easter services. It was not a memorial to the Christian war dead? No. This was simply a war memorial. The Jewish and Buddhist and other people who served on the American flag. Well. . . The VFW intended this to serve as a memorial to those Americans who died in World War I, and the city of Eugene cross was originally erected as a religious cross. It was only designated a war memorial after the Oregon courts had held it unconstitutional. Can I say something about context, since you just mentioned context? Mm-hmm. Doesn't the fact that they specifically declined to put other war memorials or stupas or whatever in this area, doesn't that give this some context that makes it worse than those other cases? I think the only. . . You know, a Buddhist stupa, if indeed that was a legitimate request, would have no secular purpose. It was simply a religious statement. And in that sense, it reinforces. . . I think the denial of that request reinforces the secular purpose of this memorial as a war memorial. He didn't ask to put up another war memorial. He asked to put up a religious icon. The government said no. There's a federal regulation that doesn't allow that sort of. . . this sort of display on federal parkland. The context here is that this cross is no bigger than me. It's out in the middle of the desert, in the middle of nowhere. It has no observable link to the government. And it's the only cross in any of these cases that was originally. . . What did Jesus say on it? Oh, yeah. There's a great footnote in. . . I can look and see which case it is. In one of the concurrences in the Supreme Court, I think, where one of the justices observes that a cross just standing out there is quite different from a crucifix with the image of Jesus Christ hanging on it. You go to. . . Let's say all the facts were the same. They came into the war dead. The whole thing. But they had a crucifix. I mean, it was a cross with Jesus. Entirely different case, Your Honor. Why?  You see rows and rows and rows of crosses. And you know that those crosses are memorializing those men and women who died for their country in war. And the dead Jews have stars of David. They're not forbidden to have stars of David in Arlington Center. And we go and we see these, what are religious symbols. And we see that they are memorializing death and war. You look at this cross in the middle of the desert. You know that you, as the reasonable observer, know its history. You know it was put up by the VFW 70-some-odd years ago. The government had nothing to do with it until it was faced with the destruction because it couldn't be put on the National Register of Historic Places and dedicated it as a national war memorial. The reasonable observer knows all of this history, sees its context out in the middle of the desert, and knows that it is a war memorial but it doesn't convey a message of religion. Why not pull down the cross and build a proper war memorial, you know, something with a flag, a bunch of guys pushing up a mountain. You know, I mean, if the interest... You know, there's some, in all these cases, there is this sense I get of not having the prize, you know, sporting a memorial, being totally straight. You know, they say, oh, this is so secular, there's nothing, you know, religious going on here. It just happens to be one of these things. It could be a shape, it could be any shape at all. You know, it could be a V, it could be... But it isn't. It's always a cross. And when you say, well, why don't you take down the cross and build something like a Star of David or... You know, build something that's American. They'll build, you know, put a statue of Washington or, you know, some, you know, some war hero or build, you know, something that has no conceivable religious significance. They say, oh, we're not interested. We don't want to do that. That's not what we're into. So I have this sensation that this is a shell game that really what we're going to try to do here... And you represent the government, the United States here. Of course, I'm just a little concerned about the United States getting into this shell... You know, states do this all the time in municipalities. That what we're going to do here is we're going to sort of try to see if we can play the shell game and take this thing that's clearly a religious symbol and we're going to just pretend that if you keep saying enough, this is not a religious symbol, this is not a religious symbol, it's sort of like Dorothy, you know, there's no place like home. If you just click your heel three times, it's going to become not a religious symbol. But in the end, it was put up as a cross by private parties on federal land and the symbol they picked is a symbol that commemorates Christian war dead. Now, great reference for war dead of all faith, but the fact remains is that the symbol they've selected and the symbol that remains there commemorates the war dead of one religion or one group of religions and no others. That's a simple reality. But of course, as the Court is aware, the Court defers to Congress's statement of intent under Lemon Pond 1 and in SCFC v. City of Green. And what is the congressional intent here? This was built by private parties. The congressional intent when it was designated as a national war memorial was to designate it as a national war memorial. And even in the City of Eugene case in SCFC, this Court recognized that that war, that that cross has a secular purpose. Let's talk about that. What is it exactly that Congress said? You got it there? Yeah. Congress didn't say much. Wait a minute. You asked me to defer to them. I'm not saying much. At the back of the blue brief, page 1, is section A. Just behind the blue sheet in the blue brief. Behind the blue door? Just behind the blue door. I'll take door number 1. I've done that. Paragraph A, right at the end of the paragraph, is really all that is relevant, I think. I'm sorry. What am I reading? This is the paragraph A. I'm reading paragraph A. Yeah, the paragraph A. This is the appropriation. The five-foot-tall white cross, first erected by the veterans of foreign wars, so on and so on, and now located within the boundary of the Mojave National Preserve, as well as limited in the amount of adjoining preserved property to be designated by the Secretary of the Interior, is hereby designated as a national memorial commemorating the United States' participation in World War I and honoring Americans veterans of that war. Well, what does that help you? It could have said, gee, we'll take the Catholic Church that's down here in Pasadena and designate this as a memorial of the war dead. That would not make it any less of a church. It just means that Congress has selected a religious symbol to commemorate the war dead. And as I said in SCSC. But how does that help you? How does this help secularize what is otherwise clearly the religious symbol? All that Congress says is that it's designating this thing as a war memorial. And in SCSC v. City of Eugene, this Court held, even though it held that the cross there was unconstitutional, it recognized that that cross meant Lemon Prawn One, that it had a secular purpose under Supreme Court precedent, namely Lynch and Santa Fe, that even the primary purpose... Well, but that doesn't help you much. You could say, let's say Congress has said, you know, there's a Catholic Church in Pasadena and we designate it as a war memorial. Prawn One we meant. It's a secular purpose. Exactly. But then you fall down all the other prawns because what they selected to achieve a secular purpose is a purely religious symbol. Well, at least under Lemon Prawn One. Unless it is motivated wholly by religious considerations, it meets Lemon Prawn One. So just putting Lemon Prawn One aside, under SCSC, under Lynch, under Santa Fe, we clearly meet Lemon Prawn One here. Lemon Prawn Two... I think this has been a crescent moon, you know, Muslim symbol in the desert, you know. I think Congress would be much less eager to have it commemorate our war then. I just somehow have that feeling in my heart. I won't deign to speak for Congress on that, but unless the Court has further questions, I would love a minute for rebuttal if I might. Okay. We'll see. Do you think you'll need it? I'm sure Mr. Wiesner will give away the game. May it please the Court. I'm actually going to try to say as little as possible so I don't give away the game, but I'd just like to make a couple of very small points, particularly in reference to Judge Rustani's questions and the government's counsel. The claim that Ellis didn't decide, didn't address religion, and didn't decide whether a Catholic plaintiff could bring a case where a Christian symbol was involved is dead wrong. The Court says on 1523, The district court properly held each of the named plaintiffs had standing to bring the case. Up above, it explains that one of the named plaintiffs was John Murphy, a Catholic San Diego resident and taxpayer, although the Court did not grant taxpayer a standing. The injury alleged by Mr. Murphy was he was offended by the government spending money and using a Christian symbol. So his injury was, clearly, implicitly here, what Judge Kaczynski is pointing out, which was a separationist principle. His injury wasn't that he was offended because he was like, I mean, it wasn't a religious issue. This was a symbol of his religion. He was simply saying the government shouldn't be in the business of establishing religion. So any questions to whether a Catholic can bring a case, an alleged establishment clause injury, and whether that person has an injury that's within the zone of interest, clearly resolved by Ellis. The second, the Court doesn't need to look at the Second Circuit case, which really isn't on point anyway. It doesn't involve a religious display where the plaintiffs have contact with the religious display. As to the merits, the purported distinctions here are simply untenable. The government makes an issue about the size of the cross, but as we've pointed out in our briefs, there are similar-sized religious symbols, such as the Ten Commandments statue in the Books v. City of Elkhart case. It was an almost identical size. The Court determined that that violated the Establishment Clause. And the fact is that not one of the — every one of the Federal court cases which has addressed a similar issue and held that a cross on government property where it is in the public forum violates the Establishment Clause, the courts never once even discussed the size except in the facts section of the brief. They never said our holding is because it's a big cross or our holding is because it's a small cross. And, in fact, in a number of cases we've pointed out, tiny crosses on city seals the courts have held, that's a preeminent symbol of Christianity, violates the Establishment Clause. So to attempt to glean out of these cases that there's some distinction on the basis of size simply doesn't hold water. The fact is that this Court can write a very short opinion affirming the district court's decision on the basis of two Ninth Circuit cases, Ellis v. City of La Mesa and the separation of church and state case. And, of course, if the Court wanted to look at other cases, every other Federal court to consider a similar issue, the Jewish War Veterans case from the D.C. District Court, the North versus the Gonzales v. North Lightship case from the Seventh Circuit, the ACLU's v. Eccles case from Texas, they've all reached the same conclusion. Kennedy. The 11th Amendment just got rid of the slab Ten Commandments. That's right. In the Alabama case. That's exactly right. And, and, and, and, and. Despite, despite the secular justification. Right. The secular justification, even if the government's right that they can win on prong one, the Ninth Circuit in, in, in the SCSC case, this Court clearly recognized that it absolutely couldn't win on prong two. So there really is no distinction that's of any meaning here. The government says, well, this cross isn't illuminated. The cross in SCSC was illuminated. But the fact was, in most cases, it was illuminated on secular holidays. So I don't think the illumination issue helps them. In addition, the cross in the Seventh Circuit in the Gonzales case wasn't illuminated. So these are all distinctions that have no merit. I mean, yes, this is a cross in California versus Oregon. But that also is a distinction that is of no merit. So when they sell the cross, are you going to be back? We never like to give away our intentions. And I'd be waiting for my direction from you, Judge Kuczynski, as to what we should do. But I, I think the answer is, the answer is. I was more, I was totally predicting based on, based upon. Previous behavior. Well, I mean, what I had seen, what I had seen with attempts to give away the land under the cross in, in Monsanto, that maybe, maybe this is all very different. Well, without giving a major preview, I certainly think given the small size of land they're trying to transfer and the fact that the provision that I've seen that's in the House bill, and evidently not in, in any Senate bill, has a reversionary interest. It basically says if the private party that buys this land takes down the war memorial, it reverts back to the U.S. government. So it certainly suggests that the government's interest here is not swapping land. The government's interest is making sure that the cross stays up. Under those circumstances, I think that this would be a slam-dunk case. But at this point, certainly we and, and I'm sure the government will inform you if this transfer takes place. At this point, it is only in a House bill and not in a Senate bill. I'm happy to answer any further questions. But as I said, I think two decisions from this Court are binding. I don't think that there's any reasonable difference. And exactly as Judge Kaczynski points out, this is the most pernicious form of establishment. The government's not only taken this cross and embraced it and said this is our national memorial, they've told anybody else who wants to come onto Federal land in that area and put up a symbol, absolutely not. We won't let you. So this is the classic form of preference that the Supreme Court talked about in Panett and, Judge Kaczynski, you talked about in your concurrence in the Chrysler case. When the government prefers religious speech, it's the absolute worst form of an establishment. If the Court has no further questions, I'll submit. Thank you. If I might take 60 seconds. 60 seconds, you're good. Thank you. First of all, in Ellis, there was no question or there was no discussion of whether a Catholic person can challenge a cross. I didn't find any cases discussing that particular question. As I said before, in SCSC and Ellis, all of the crosses at issue did not have a war memorial as their original purpose. This case is distinguishable on that ground. And it was the government that brought the Ten Commandments case to the Court's attention because on the standing issue, because the Court there observed that if the plaintiffs had just disagreed with the defendant's views about religion and government, their injury would not be redressable. So I'd point the Court to that case on the standing issue. And if there are no further questions, thank you very much for your time. Okay. Thank you. Cases, I will stand submitted.
judges: Kozinski, T.G. Nelson, Restani